**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION (CLEVELAND)**

| | | |
|---|---|---|
| **JESSICA BURCIAGA,** | : | **Case No.:** 1:18-cv-02464 |
| **PAOLA CANAS,** | : | |
| **JORDAN CARVER,** | : | |
| **GEMMA LEE FARRELL,** | : | **Judge:** |
| **CIELO JEAN GIBSON,** | : | |
| **TIFFANY TOTH GRAY,** | : | |
| **VIDA GUERRA,** | : | |
| **JAMIE LONGORIA,** | : | |
| **URSULA MAYES,** | : | **COMPLAINT AND JURY DEMAND** |
| **TIFFANY SELBY, and** | : | |
| **JACLYN SWEDBERG** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CRAZY HORSE LICENSING, INC.,** | : | |
| **ENTERTAINMENT DYNAMICS LLC** | : | |
| **d/b/a CRAZY HORSE SALOON and** | : | |
| **THE AIRPORT CRAZY HORSE,** | : | |
| **PARKBROOK ENTERTAINMENT INC.** | : | |
| **d/b/a THE AIRPORT CRAZY HORSE** | : | |
| **and THE PLATINUM HORSE,** | : | |
| **FRANK B SPENCER d/b/a CRAZY** | : | |
| **HORSE MEN'S CLUB and CRAZY** | : | |
| **HORSE SALOON,** | : | |
| **ALMI RESTAURANT INC. d/b/a** | : | |
| **CRAZY HORSE MEN'S CLUB,** | : | |
| **GOLD RESTAURANT INC. d/b/a/** | : | |
| **CRAZY HORSE CLEVELAND** | : | |
| | : | |
| **Defendants.** | : | |
| | : | |

Plaintiffs Jessica Burciaga, Paola Canas, Jordan Carver, Gemma Lee Farrell, Cielo Jean

Gibson, Tiffany Toth Gray, Vida Guerra, Jamie Longoria, Ursula Mayes, Tiffany Selby, and

Jaclyn Swedberg, by and through their attorneys, BURG SIMPSON ELDREDGE HERSH &

JARDINE, P.C., hereby submit their Complaint and Jury Demand against Defendants, Crazy

Horse Licensing, Inc., Entertainment Dynamics LLC d/b/a Crazy Horse Saloon and The Airport Crazy Horse, Parkbrook Entertainment, Inc. d/b/a The Airport Crazy Horse and The Platinum Horse, Frank B. Spencer d/b/a Crazy Horse Men's Club and Crazy Horse Saloon, ALMI Restaurant, Inc. d/b/a/ Crazy Horse Men's Club, and Gold Restaurant Inc. d/b/a/ Crazy Horse Cleveland and allege and aver as follows:

## INTRODUCTION

1.     This is an action for damages and other relief arising from the misappropriation, misuse, and alteration of Plaintiffs' images by Defendants in order to promote the Crazy Horse brand and Defendants' gentlemen's clubs, Crazy Horse Airport (aka The Platinum Horse) (fka Crazy Horse Saloon), Crazy Horse Men's Club, and Crazy Horse Cleveland (collectively "the Defendant Clubs").

2.     According to Defendant Crazy Horse Licensing, Inc.'s website (accessible via the URL: http://crazyhorse.com/), the name "Crazy Horse" and the "Horse Head" logo are registered trademarks that are owned by Crazy Horse Licensing, Inc. and used under license by licensees.

3.     Upon information and belief, Defendant Entertainment Dynamics LLC did license and Defendants Parkbrook Entertainment, Inc., Frank B. Spencer, ALMI Restaurant Inc., and Gold Restaurant Inc. currently license the Crazy Horse name and logo from Defendant Crazy Horse Licensing, Inc.

4.     Defendant Crazy Horse Licensing, Inc. is owned in whole or in part by Frank B. Spencer.

5.     Defendant Parkbrook Entertainment, Inc. is owned in whole or in part by Frank B. Spencer.

6.     Defendant ALMI Restaurant Inc. is owned in whole or in part by Frank B. Spencer.

2

7.      Defendant Gold Restaurant Inc. is owned in whole or in part by Frank B. Spencer.

8.      Defendants work together to advertise, market, and promote the Defendant Clubs. In an effort to drive traffic and economic and commercial benefits to their Clubs, Defendants post pictures of women on their respective webpages and social media platforms, including on Facebook, Twitter, and Instagram.

9.      Defendants have developed and instituted a policy of misappropriation, alteration, and publication of images (including Plaintiffs') on their webpages and social media platforms that they have not paid for, and to which they have no legal right, in order to promote their clubs.

10.     Even a cursory review of Defendants' websites and social media accounts reveals the interconnected nature of Defendants' advertising, promotions, and marketing. For example, as set forth below, Defendant Crazy Horse Licensing Inc. posted misappropriated images of famous model Tiffany Toth Gray, among others, on its primary webpage next to links to each Defendant Club. Similarly, Defendants repeatedly posted advertising, promotions, and marketing to their social media accounts that expressly refer to Crazyhorse.com and the other Defendant Clubs. Finally, Defendants frequently posted the same images of the same Plaintiffs with the same or similar text on or about the same day on their respective social media accounts.

11.     Such uses of Plaintiffs' images implicate Defendants as participating in a concerted scheme of misappropriating Plaintiffs' images and publishing them, without consent or remuneration, on Defendants' social media accounts in order to promote their clubs and the Crazy Horse brand.

12.     Defendants' repeated uses of Plaintiffs' images connect Plaintiffs to and associate them with the Defendant Clubs and their respective events and activities, despite the fact that Plaintiffs have never worked at, or affiliated themselves with Defendants or the Defendant Clubs.

3

Furthermore, Plaintiffs have never contracted with or sold their images to Defendants or the Defendant Clubs. Moreover, Plaintiffs have never appeared at the Defendant Clubs and have never endorsed the Defendant Clubs or their respective events and activities.

13.     Despite this, upon information and belief, Defendants' use of Plaintiffs' images drove customers, business, and revenue to the Defendant Clubs.

14.     Defendants did not have Plaintiffs' permission to use their images or likenesses and never asked them for permission to use their images or likenesses.

15.     Defendants have not compensated Plaintiffs for the use of their images or likenesses for commercial or any other purpose.

16.     Defendants knew that their use of Plaintiffs' images and likenesses was unauthorized, and knew that their use of Plaintiffs' images would cause consumer confusion as to Plaintiffs' sponsorship, approval of, affiliation with, association with, and/or employment at Defendants' Clubs.

17.     Defendants' unauthorized use of Plaintiffs' images, likenesses, and/or identities, as described herein, violated Plaintiffs' common law right of privacy through appropriation of their images, as well as the Ohio Deceptive Trade Practices Act (O.R.C. § 4165.02(A)(2) and (3)), the Lanham Act (15 U.S.C. § 1125(a)), and unjustly enriched Defendants.

18.     Plaintiffs seek compensatory damages, disgorgement of Defendants' profits realized through their unlawful use of Plaintiffs' images, likenesses, and identities, treble damages, punitive damages, attorney's fees, injunctive relief, and other such relief as would be fair and just to remedy Defendants' unlawful acts, and to ensure that no such violations occur in the future.

4

## PARTIES

19.     Plaintiff Jessica Burciaga is a well-known professional model and is a resident and citizen of Fulton County, Georgia.

20.     Plaintiff Paola Canas is a well-known professional model and is a resident and citizen Miami-Dade County, Florida.

21.     Plaintiff Jordan Carver is a well-known professional model and is a resident and citizen of Miami-Dade County, Florida.

22.     Plaintiff Gemma Lee Farrell is a well-known professional model and is a resident and citizen of Los Angeles County, California.

23.     Plaintiff Cielo Jean Gibson is a well-known professional model and is a resident and citizen of Los Angeles County, California.

24.     Plaintiff Tiffany Toth Gray is a well-known professional model and is a resident and citizen of Orange County, California.

25.     Plaintiff Vida Guerra is a well-known professional model and is a resident and citizen of Los Angeles County, California.

26.     Plaintiff Jamie Longoria is a well-known professional model and is a resident and citizen of Maricopa County, Arizona.

27.     Plaintiff Ursula Mayes is a well-known professional model and is a resident and citizen of Orange County, California.

28.     Plaintiff Tiffany Selby is a well-known professional model and is a resident and citizen of Duval County, Florida.

29.     Plaintiff Jaclyn Swedberg is a well-known professional model and is a resident and citizen of San Bernardino County, California.

30. Defendant Crazy Horse Licensing Inc. is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 1474 St. Clair Ave., Cleveland, Ohio 44114. Frank B. Spencer owns, operates, or otherwise controls Defendant Crazy Horse Licensing Inc. Crazy Horse Licensing Inc. can be served through its statutory agent Harold M. Schwarz, III, 1100 Superior Ave., 19th Floor, Cleveland, Ohio 44114.

31. Defendant Entertainment Dynamics LLC d/b/a Crazy Horse Saloon and The Airport Crazy Horse is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 16600 Brookpark Rd., Brook Park, Ohio 44135. At times relevant to this Complaint, Entertainment Dynamics LLC owned and operated the gentlemen's club located at 16600 Brookpark Rd., Brook Park, Ohio 44135 known at various time as Crazy Horse Saloon, The Airport Crazy Horse, and/or Platinum Horse. Entertainment Dynamics LLC can be served through its statutory agent William J. Kirchner, 339 Skyview Rd., Cleveland, Ohio 44109.

32. Defendant Parkbrook Entertainment, Inc. d/b/a The Airport Crazy Horse and The Platinum Horse is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 16600 Brookpark Rd., Brook Park, Ohio 44135. At times relevant to this Complaint, Parkbrook Entertainment, Inc. owned and operated the gentlemen's club located at 16600 Brookpark Rd., Brook Park, Ohio 44135 known at various time as Crazy Horse Saloon, The Airport Crazy Horse, and/or Platinum Horse. Hereafter, the gentlemen's club located at 16600 Brookpark Rd., Brook Park, Ohio 44135 will be referred to as "The Airport Crazy Horse." Defendant Parkbrook Entertainment, Inc. can be served through its statutory agent Frank B. Spencer, 6575 Olde York Rd., Cleveland, Ohio 44130.

33. Defendant ALMI Restaurant Inc. d/b/a Crazy Horse Men's Club is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 25540 Miles

6

Rd., Bedford Heights, Ohio 44146. At all times relevant to this Complaint, ALMI Restaurant Inc. has owned and operated the gentlemen's club located at 25540 Miles Rd., Bedford Heights, Ohio 44146 known as Crazy Horse Men's Club. Defendant ALMI Restaurant Inc. can be served through its statutory agent Frank B. Spencer, 6575 Olde York Rd., Cleveland, Ohio 44130.

34.     Defendant Gold Restaurant Inc. d/b/a/ Crazy Horse Cleveland is an Ohio corporation with its principal place of business in Cuyahoga County, Ohio, located at 1438 St. Clair Ave., Cleveland, Ohio 44114. At all times relevant to this Complaint, Gold Restaurant Inc. has owned and operated the gentlemen's club located at 1438 St. Clair Ave., Cleveland, Ohio 44114 known as Crazy Horse Cleveland. Defendant Gold Restaurant Inc. can be served through its statutory agent Frank B. Spencer, 6575 Olde York Rd., Cleveland, Ohio 44130.

35.     Defendant Frank B. Spencer is a resident and citizen of Cuyahoga County, Ohio. At all times relevant to this Complaint, the trade name "Crazy Horse Men's Club" has been registered in Ohio to Frank B. Spencer. At all times relevant to this Complaint, the trade name "Crazy Horse Saloon" has been registered in Ohio to Frank B. Spencer. Upon information and belief, Frank B. Spencer owns, operates, and/or controls Crazy Horse Licensing Inc., Parkbrook Entertainment, Inc., ALMI Restaurant Inc., and Gold Restaurant Inc.

## JURISDICTION AND VENUE

36.     This Court has subject-matter jurisdiction over Plaintiffs' claims that arise under 15 U.S.C. § 1125(a)(1) (The Lanham Act) based upon 28 U.S.C. § 1331.

37.     Because this Court has original jurisdiction over Plaintiffs' Lanham Act claims, the Court also has supplemental jurisdiction over Plaintiffs' state law claims based on 28 U.S.C. § 1367, as they are so related to Plaintiffs' Lanham Act claims that they form part of the same case or controversy.

38.     This Court also has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Plaintiffs and Defendants, and the amount in controversy for each Plaintiff against each relevant Defendant, excluding interest and costs, exceeds $75,000.

39.     The Court has personal jurisdiction over Defendants by virtue of their presence, residence, incorporation, operation, and regular and systematic contacts in Ohio.

40.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, because Defendants reside in this district, this district is where a substantial part of the events or omissions giving rise to the claims stated herein occurred, and Defendants are subject to personal jurisdiction in this venue.

## **GENERAL ALLEGATIONS**

## I.     **PLAINTIFFS ARE PROFESSIONAL MODELS AND THEIR IMAGES ARE COMMERCIALLY VALUABLE**

41.     Each Plaintiff is a professional model who earns a living by, *inter alia,* acting, modeling, and selling her image to companies and individuals for the advertisement of products and services.

42.     To make their living, each Plaintiff must, *inter alia,* promote her image and likeness to select clients, companies, commercial brands, media, social media, and entertainment outlets for the advertisement of products and services. She must also protect her own reputation in order to enhance her brand for modeling, acting, hosting, and other opportunities.

43.     Each Plaintiff's career in modeling, acting, and private enterprise has value stemming from the goodwill and reputation she has built, all of which are critical to establishing a brand, being selected for jobs, and maximizing earnings.

8

44.     Each Plaintiff commands substantial sums of money for the licensed commercial use of her image and likeness.

45.     A model's reputation directly impacts the commercial value associated with the use of one's image, likeness, or identity to promote a product or service.

46.     Each Plaintiff is a professional model in the ordinary course. Each Plaintiff seeks to control the commercial use and dissemination of her image and, thus, actively participates in vetting and selecting modeling, acting, advertising, brand spokesperson, or hosting engagements.

47.     In the modeling industry, reputation is critical; endorsing, promoting, advertising or marketing the "wrong" product, brand, business, or service, or working in a disreputable industry, can severely impact a model's career by limiting or foreclosing future modeling or brand endorsement opportunities.

48.     Conversely, association with high-end companies, products, or magazines can enhance and amplify a model's earning potential and career opportunities by making a model more sought after and desirable.

49.     As set forth below, each Plaintiff's image, likeness, and/or identity has been misappropriated and intentionally altered by or at the direction of Defendants, for use in their online marketing scheme designed to promote the Defendant Clubs.

50.     At no point has any Plaintiff authorized, consented to, or otherwise agreed to Defendants' use of their image, likeness, and/or identity.

## II.     CRAZY HORSE LICENSING INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING THE CRAZY HORSE BRAND AND DEFENDANT CLUBS

51.     Defendant Crazy Horse Licensing Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for the Crazy Horse brand through, among

other things, active and dynamic use of Crazy Horse's website and various coordinated social media promotions for use by the Defendant Clubs on Facebook, Twitter, and Instagram ("social media sites"), among others.

52.     Crazy Horse Licensing Inc.'s advertising, marketing, and promotional activities on its website and social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

53.     At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on its website.

54.     Upon information and belief, Crazy Horse Licensing Inc. manages, operates and/or controls a website (accessible via the URL: http://crazyhorse.com/) through which it promotes, endorses, and markets the Crazy Horse brand and its affiliated gentlemen's clubs, including the Defendant Clubs, solicits customers, and advertises Crazy Horse events, particularly through the use of images of women in various stages of undress.

55.     Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

56.     Crazy Horse Licensing Inc. has used Ms. Gray and Ms. Mayes's images and likenesses in advertisements and marketing displays to promote the Crazy Horse brand and the Defendant Clubs, to generate additional revenue, and increase sales.

### III.   CRAZY HORSE LICENSING INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

#### A.  *Tiffany Toth Gray's Images*

57.     Crazy Horse Licensing Inc. posted Plaintiff's image and likeness on its website next to links to each Defendant Club.

58.     Attached as **Exhibit 1**, which is hereby incorporated by reference, are copies of Crazy Horse Licensing Inc.'s uses of Plaintiff's image and likeness.

#### B.  *Ursula Mayes's Images*

59.     Upon information and belief, Crazy Horse Licensing Inc. created marketing, advertisements, and promotions using Plaintiff's image and likeness to promote the Crazy Horse Brand and each Defendant Club.

60.     Attached as **Exhibit 2**, which is hereby incorporated by reference, are copies of Crazy Horse Licensing Inc.'s uses of Plaintiff's image and likeness.

61.     Upon information and belief, after creating the marketing, advertisements, and promotions contained in Exhibit 2, Defendant distributed these materials to the Defendant Clubs to be posted on their respective social media platforms.

### IV.   ENTERTAINMENT DYNAMICS LLC, FRANK B. SPENCER, AND PARKBROOK ENTERTAINMENT, INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING THE AIRPORT CRAZY HORSE

62.     Upon information and belief, between 2009 and the present, ownership and control of The Airport Crazy Horse has changed hands between Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc.

63.     Indeed, public records reveal that from 2004 through the present, the tradename Crazy Horse Saloon, a former and/or alternate name for The Airport Crazy Horse, was registered to Frank B. Spencer.

64.     Likewise, public records reveal that the liquor license associated with the address for The Airport Crazy Horse was issued to Entertainment Dynamics, LLC from approximately 2009 through February 25, 2015. Thereafter, the liquor license was issued to Parkbrook Entertainment, Inc., which currently holds the license.

65.     Although it is presently unknown to Plaintiffs how or when ownership and control over The Airport Crazy Horse changed, this will be revealed through discovery.

66.     While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. coordinated or were otherwise responsible for the advertising, marketing, and promotional activities for The Airport Crazy Horse through, among other things, active and dynamic use and maintenance of the Club's website and various coordinated social media promotions through Facebook and Twitter ("social media sites"), among others.

67.     While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. had actual and exclusive control over the contents contained within and/or displayed on each of The Airport Crazy Horse's marketing channels.

68.     While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants

12

Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. managed, operated and/or controlled a website (accessible via the URL: https://crazyhorse.com/home/brook-park/) through which they promoted, endorsed, and marketed their business, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress.

69.     While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. exercised actual control over the contents displayed on The Airport Crazy Horse's webpage through their own personal acts of posting and maintaining items on the webpage, or by expressly permitting and condoning another person(s)' act of posting and maintaining items on the webpage.

70.     While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. managed, operated and/or controlled a "Facebook page" (accessible via the URL: https://www.facebook.com/The-Airport-Crazy-Horse-132072060140273/?rf= 1553597891624118) through which they promoted, endorsed, and marketed The Airport Crazy Horse, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress. As of October 24, 2018, 2,363 people followed The Airport Crazy Horse's Facebook page.

71.     While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. exercised

13

actual control over the contents displayed on The Airport Crazy Horse's Facebook page through their own personal acts of posting and maintaining items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting and maintaining items on the Facebook page.

72.    While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. managed, operated    and/or    controlled    a    "Twitter    account"    (accessible    via    the    URL: https://twitter.com/platinum_horse?lang=en) through which they promoted, endorsed, and marketed The Airport Crazy Horse, solicited customers, and advertised events for The Airport Crazy Horse, particularly through the use of images of women in various stages of undress. As of October 24, 2018, The Airport Crazy Horse's Twitter page had 430 followers.

73.    While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. exercised actual control over the contents displayed on their Twitter account through their own personal acts of posting and maintaining items on the account, or by expressly permitting and condoning another person(s)' act of posting and maintaining items on the Twitter account.

74.    While Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. owned, operated, and controlled The Airport Crazy Horse, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc. used Plaintiffs' images and likenesses in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote The Airport Crazy Horse.

14

## V.  ENTERTAINMENT DYNAMICS LLC, FRANK B. SPENCER, AND PARKBROOK ENTERTAINMENT, INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

75.     Upon information and belief, between 2009 and the present, ownership and control of The Airport Crazy Horse has changed hands between Entertainment Dynamics LLC, Frank B. Spencer, and Parkbrook Entertainment, Inc.

### A.  Jessica Burciaga's Images

76.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on April 3, 2017, May 30, 2017, August 14, 2017, and April 30, 2018.

77.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on April 3, 2017, May 30, 2017, August 14, 2017, and April 30, 2018.

78.     Attached as **Exhibit 3,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

### B.  Jordan Carver's Images

79.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 1, 2013, May 28, 2013, June 6, 2013, July 2, 2013, July 25, 2013, August 3, 2018, August 6, 2013, September 30, 2013, October 26, 2013, December

7, 2013, December 20, 2013, August 21, 2014, October 4, 2014, and October 25, 2014, November

12, 2015, November 22, 2015, December 8, 2015, and July 4, 2017.

80.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B.

Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The

Airport Crazy Horse's Twitter page on July 4, 2017.

81.     Attached as **Exhibit 4,** which is hereby incorporated by reference, are copies of

Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment,

Inc.'s uses of Plaintiff's images and likeness.

### C.  Gemma Lee Farrell's Images

82.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B.

Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The

Airport Crazy Horse's Facebook page on July 14, 2015 and August 27, 2017.

83.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B.

Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The

Airport Crazy Horse's Twitter page on August 27, 2017.

84.     Attached as **Exhibit 5,** which is hereby incorporated by reference, are copies of

Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment,

Inc.'s uses of Plaintiff's images and likeness.

### D.  Cielo Jean Gibson's Images

85.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B.

Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The

Airport Crazy Horse's Facebook page on November 27, 2013 and November 26, 2014, August 28,

2015, November 25, 2015, and April 6, 2018.

16

86.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on August 28, 2015, September 6, 2016, and April 6, 2018.

87.     Attached as **Exhibit 6,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

### E.  *Tiffany Toth Gray's Images*

88.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 27, 2015, June 2, 2015, November 23, 2016, December 12, 2016, February 27, 2017, and March 20, 2017.

89.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on November 23, 2016, December 12, 2016, February 27, 2017, and March 20, 2017.

90.     Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote The Airport Crazy Horse.

91.     Attached as **Exhibit 7,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

### F.  Vida Guerra's Images

92.    Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on January 16, 2015.

93.    Attached as **Exhibit 8,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

### G.  Ursula Mayes's Images

94.    Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on April 30, 2014, May 1, 2014, May 9, 2014, December 26, 2014, and January 2, 2015, March 2, 2016, and April 17, 2018.

95.    Attached as **Exhibit 9,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

### H.  Tiffany Selby's Images

96.    Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 5, 2015 and May 5, 2016.

97.    Attached as **Exhibit 10,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

### I.  *Jaclyn Swedberg's Images*

98.    Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Facebook page on May 4, 2017, June 4, 2017, July 1, 2017, September 12, 2017, October 29, 2017, April 27, 2018, June 14, 2018, and September 6, 2018.

99.    Upon information and belief, Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc. posted Plaintiff's image and likeness on The Airport Crazy Horse's Twitter page on May 4, 2017, June 4, 2017, July 1, 2017, September 12, 2017, October 29, 2017, April 27, 2018, June 14, 2018, and September 6, 2018.

100.    Attached as **Exhibit 11,** which is hereby incorporated by reference, are copies of Defendants Entertainment Dynamics LLC, Frank B. Spencer, and/or Parkbrook Entertainment, Inc.'s uses of Plaintiff's images and likeness.

## VI.    FRANK B. SPENCER AND ALMI RESTAURANT, INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING THE CRAZY HORSE MEN'S CLUB

101.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. coordinate or are otherwise responsible for the advertising, marketing, and promotional activities for Crazy Horse Men's Club through, among other things, active and dynamic use of the Crazy Horse Men's Club's website and various coordinated social media promotions through Facebook and Twitter ("social media sites"), among others.

102.    Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web.

103.    Indeed, Crazy Horse Men's Club's social media following is substantial.

104.    At all times relevant to this Complaint, Defendants Frank B. Spencer and ALMI Restaurant, Inc. had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

105.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. manage, operate and/or control a website (accessible via the URL: https://crazyhorse.com/home/bedford-heights/) through which they promote, endorse, and market their business, solicit customers, and advertise events for the Crazy Horse Men's Club, particularly through the use of images of women in various stages of undress.

106.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. have at all times relevant to this Complaint exercised actual control over the contents displayed on their webpage through their own personal acts of posting items on the webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

107.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. manage, operate and/or control a "Facebook page" (accessible via the URL: https://www.facebook.com/Crazy-Horse-Mens-Club-122354644463898/?rf=238959179470868) through which they promote, endorse, and market their business, solicit customers, and advertise events for the Crazy Horse Men's Club, particularly through the use of images of women in various stages of undress. As of October 24, 2018, 2,384 people followed the Crazy Horse Men's Club's Facebook page.

108.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. have at all times relevant to this Complaint exercised actual control over the contents displayed on their Facebook page through their own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

20

109.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. manage, operate and/or control a "Twitter account" (accessible via the URL: https://twitter.com/crazyhorsemc?lang=en) through which they promote, endorse, and market their business, solicit customers, and advertise events for the Crazy Horse Men's Club, particularly through the use of images of women in various stages of undress. As of October 24, 2018, 804 people followed the Crazy Horse Men's Club Twitter page.

110.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. have at all times relevant to this Complaint exercised actual control over the contents displayed on their Twitter account through their own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram account.

111.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. used Plaintiffs' images and likenesses in advertisements and marketing displays on their social media accounts to generate additional revenue, increase sales, and promote the Crazy Horse Men's Club.

## VII.    FRANK B. SPENCER AND ALMI RESTAURANT, INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A.  *Jessica Burciaga's Images*

112.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on May 24, 2017.

113.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on May 24, 2017.

114.    Attached as **Exhibit 12**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

21

### B. Paola Canas's Images

115.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on November 27, 2015.

116.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on November 27, 2015.

117.     Attached as **Exhibit 13**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### C. Jordan Carver's Images

118.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on April 8, 2013, December 20, 2013, March 8, 2014, August 30, 2014, December 5, 2014, February 28, 2015, twice on April 3, 2015, August 20, 2015, February 28, 2016, February 19, 2017, April 5, 2017, and July 4, 2017.

119.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on February 19, 2017, April 5, 2017, and July 4, 2017.

120.     Attached as **Exhibit 14**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### D. Gemma Lee Farrell's Images

121.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on November 12, 2015.

122.     Attached as **Exhibit 15**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### E.  Tiffany Toth Gray's Images

123.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on December 3, 2013, June 25, 2014, August 27, 2014, December 9, 2014, and January 19, 2017.

124.    Upon information and belief, Defendants Frank B. Spencer and ALMI Restaurant, Inc. also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote The Crazy Horse Men's Club.

125.    Attached as **Exhibit 16**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### F.  Vida Guerra's Images

126.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on August 30, 2013 and October 17, 2014.

127.    Attached as **Exhibit 17**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### G.  Ursula Mayes's Images

128.    Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on April 30, 2014, May 1, 2014, May 3, 2014, November 14, 2014, April 16, 2015, July 29, 2015, October 15, 2015, December 10, 2015, March 2, 2016, April 13, 2016, November 6, 2016, November 22, 2016, December 1, 2016, December 10, 2016, March 9, 2017, April 10, 2017, May 9, 2017, July 1, 2017, August 8, 2017, September 23, 2017, October 19, 2017, November 26, 2017, December 12, 2017, February 1, 2018, February 15, 2018, March 18, 2018, and May 4, 2018 .

23

129.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on November 6, 2016, March 9, 2017, April 10, 2017, May 6, 2017, July 1, 2017, August 8, 2017, September 23, 2017, October 19, 2017, November 26, 2017, December 12, 2017, February 1, 2018, February 15, 2018, March 18, 2018, and May 4, 2018.

130.     Attached as **Exhibit 18**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### H. Tiffany Selby's Images

131.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on May 5, 2016, March 13, 2018, March 27, 2018, April 10, 2018, and April 17, 2018.

132.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on May 5, 2016, March 13, 2018, March 27, 2018, April 10, 2018, April 17, 2018, and April 24, 2018.

133.     Attached as **Exhibit 19**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

### I.  Jaclyn Swedberg's Images

134.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on The Crazy Horse Men's Club's Facebook page on March 7, 2017 and July 29, 2017.

135.     Defendants Frank B. Spencer and ALMI Restaurant, Inc. posted Plaintiff's image and likeness on the Crazy Horse Men's Club's Twitter page on March 7, 2017 and July 29, 2017.

24

136.    Attached as **Exhibit 20**, which is hereby incorporated by reference, are copies of Defendants Frank B. Spencer and ALMI Restaurant, Inc.'s uses of Plaintiff's images and likeness.

## VIII.   GOLD RESTAURANT INC.'S USE OF WEBSITE AND SOCIAL MEDIA PLATFORMS FOR MARKETING CRAZY HORSE CLEVELAND

137.    Defendant Gold Restaurant Inc. coordinates or is otherwise responsible for the advertising, marketing, and promotional activities for Crazy Horse Cleveland through, among other things, active and dynamic use of Crazy Horse Cleveland's website and various coordinated social media promotions through Facebook, Instagram, and Twitter ("social media sites"), among others.

138.    Gold Restaurant Inc.'s advertising, marketing, and promotional activities on social media sites are publically accessible through the World Wide Web, including through links on Defendant's website.

139.    Indeed, Gold Restaurant Inc.'s social media following is substantial.

140.    At all times relevant to this Complaint, Defendant had actual and exclusive control over the contents contained within and/or displayed on each of these marketing channels.

141.    Upon information and belief, Gold Restaurant Inc. manages, operates and/or controls a website (accessible via the URL: https://crazyhorse.com/home/Cleveland-Ohio/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress and links to Crazy Horse Cleveland's social media accounts.

142.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its webpage through its own personal acts of posting items on the

webpage, or by expressly permitting and condoning another person(s)' act of posting items on the webpage.

143.    Upon information and belief,  Gold Restaurant Inc. manages, operates and/or controls a "Facebook page" (accessible via the URL: https://www.facebook.com/Crazy-Horse-Cleveland-181740621862161/) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress. As of October 24, 2018, 3,987 people followed Crazy Horse Cleveland's Facebook page.

144.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Facebook page through its own personal acts of posting items on the Facebook page, or by expressly permitting and condoning another person(s)' act of posting items on the Facebook page.

145.    Upon information and belief,  Gold Restaurant Inc. manages, operates and/or controls    an    "Instagram    page"    (accessible    via    the    URL: https://www.instagram.com/Crazy_Horse_Cleveland/?hl=en)    through    which    it    promotes, endorses, and markets its business, solicits customers, and advertises events for Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress. As of October 24, 2018, 873 people followed Crazy Horse Cleveland's Instagram page.

146.    Defendant has at all times relevant to this Complaint exercised actual control over the contents displayed on its Instagram page through its own personal acts of posting items on the Instagram page, or by expressly permitting and condoning another person(s)' act of posting items on the Instagram page.

147.    Upon information and belief, Gold Restaurant Inc. manages, operates and/or controls a "Twitter account" (accessible via the URL: https://twitter.com/Crazy_Horse_CLE) through which it promotes, endorses, and markets its business, solicits customers, and advertises events for Crazy Horse Cleveland, particularly through the use of images of women in various stages of undress. As of October 24, 2018, 637 people followed Crazy Horse Cleveland's Twitter page.

148.    Gold Restaurant Inc. has at all times relevant to this Complaint exercised actual control over the contents displayed on its Twitter account through its own personal acts of posting items on the account, or by expressly permitting and condoning another person(s)' act of posting items on the Twitter account.

149.    Gold Restaurant Inc. has used Plaintiffs' images and likenesses in advertisements and marketing displays on its social media accounts to generate additional revenue, increase sales, and promote Crazy Horse Cleveland.

## IX.    GOLD RESTAURANT INC.'S MISAPPROPRIATION OF PLAINTIFFS' IMAGES

### A.  *Jordan Carver's Images*

150.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on December 6, 2012, March 1, 2013, April 8, 2013, April 24, 2013, June 5, 2013, June 24, 2013, July 15, 2013, August 26, 2013, September 9, 2013, October 15, 2013, December 6, 2013, December 20, 2013, December 24, 2013, January 21, 2014, February 13, 2014, March 3, 2014, March 10, 2014, April 2, 2014, May 12, 2014, June 10, 2014, July 22, 2014, August 25, 2014, October 23, 2014, December 5, 2014, December 8, 2014, December 15, 2014, January 8, 2015, January 30, 2015, February 16, 2015, April 3, 2015, April 14, 2015, May

27

11, 2015, June 9, 2015, June 27, 2015, October 26, 2015, November 5, 2015, December 17, 2015, January 12, 2016, February 23, 2016, May 17, 2016, June 16, 2016, August 4, 2016, September 26, 2016, October 13, 2016, November 7, 2016, December 20, 2016, January 17, 2017, February 15, 2017, March 7, 2017, March 20, 2017, May 4, 2017, July 11, 2017, July 15, 2017, July 19, 2017, August 31, 2017, September 27, 2017, September 29, 2017, November 14, 2017, January 2, 2018, January 12, 2017, February 8, 2018, March 2, 2018, and March 20, 2018.

151.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on June 27, 2015, August 4, 2016, November 7, 2016, December 20, 2016, February 15, 2017, February 19, 2017, April 4, 2017, July 15, 2017, January 2, 2018, and March 20, 2018.

152.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Instagram page on July 12, 2017.

153.    Attached as **Exhibit 21**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

### B.  *Gemma Lee Farrell's Images*

154.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on August 20, 2015, February 8, 2017, and February 14, 2017.

155.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on December 27, 2016 and February 14, 2017.

156.    Attached as **Exhibit 22**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

28

### C.  Cielo Jean Gibson's Images

157.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on August 28, 2015 and September 6, 2016.

158.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on August 28, 2015 and September 6, 2016.

159.    Attached as **Exhibit 23**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

### D.  Tiffany Toth Gray's Images

160.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on January 4, 2017, April 20, 2017, September 11, 2017, October 10, 2017, and June 12, 2018.

161.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on June 12, 2018.

162.    Upon information and belief, Gold Restaurant Inc. also played an active role in posting Plaintiff's image and likeness to crazyhorse.com in an effort to promote Crazy Horse Cleveland.

163.    Attached as **Exhibit 24**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

### E.  Jamie Longoria's Images

164.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on December 1, 2013.

165.    Attached as **Exhibit 25**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

29

### F. Ursula Mayes's Images

166.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on April 30, 2014, May 1, 2014, January 2, 2015, March 2, 2016, July 26, 2016, December 12, 2016, and March 9, 2017.

167.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on March 9, 2017.

168.    Attached as **Exhibit 26**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

### G. Tiffany Selby's Images

169.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on May 5, 2015 and May 5, 2016.

170.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on May 5, 2016.

171.    Attached as **Exhibit 27**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

### H. Jaclyn Swedberg's Images

172.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Facebook page on April 22, 2017 and June 23, 2017.

173.    Gold Restaurant Inc. posted Plaintiff's image and likeness on Crazy Horse Cleveland's Twitter page on April 22, 2017 and June 23, 2017.

174.    Attached as **Exhibit 28**, which is hereby incorporated by reference, are copies of Gold Restaurant Inc.'s uses of Plaintiff's images and likeness.

## X.    DEFENDANTS' USE OF PLAINTIFFS' IMAGES WAS UNAUTHORIZED, MISLEADING, CONFUSING, AND FRAUDULENT

175.    Defendants used Plaintiffs' images and likenesses to attract clientele, promote Defendants' Clubs, and generate revenue for Defendants.

176.    Defendants' use of Plaintiffs' images and likenesses, however, was unauthorized, misleading, confusing, and fraudulent.

177.    Defendants' use and alteration of Plaintiffs' images and likenesses on Defendants' websites and/or social media accounts falsely implies that Plaintiffs have worked for, endorsed, sponsored, approved of, or were otherwise associated or affiliated with Defendants, Defendants' Club, and their activities.

178.    Plaintiffs have never been employed by Defendants or contracted with Defendants to participate in events at Defendants' Clubs.

179.    Plaintiffs have never endorsed, sponsored, approved of, or otherwise associated, or affiliated themselves with Defendants, Defendants' Clubs, or their activities.

180.    Plaintiffs never gave permission, or assigned, licensed, or otherwise consented to Defendants' use or alteration of their images, likenesses, or identities to advertise, promote, market or endorse Defendants, Defendants' Clubs, or their activities.

181.    Defendants have never contacted Plaintiffs, either directly or indirectly, to request permission to use their images, likenesses, or identities to advertise, promote, market or endorse Defendants, Defendants' Clubs, or their activities.

182.    Defendants never hired or contracted with Plaintiffs to advertise, promote, market or endorse Defendants, Defendants' Clubs, or their activities.

31

183.    Defendants neither offered nor paid any remuneration to Plaintiffs for the unauthorized use of their images, likenesses, or identities.

184.    Indeed, Plaintiffs only recently learned of Defendants' unauthorized use of their misappropriated images.

## FIRST CAUSE OF ACTION
## INVASION OF PRIVACY BY APPROPRIATION

185.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

186.    Ohio recognizes a common law right of publicity whereby Plaintiffs hold the exclusive right to control the use of their image and likeness.

187.    Indeed, Ohio law provides that one who appropriates to his own benefit the image or likeness of another is subject to liability to the other for invasion of privacy.

188.    As demonstrated above, Defendants published, printed, displayed, and/or otherwise publically used Plaintiffs' images, likenesses, and identities on their websites and/or social media outlets for the purposes of trade and/or commercial advertising, including, but not limited to, promoting, advertising, and marketing Defendants' Clubs, and their events and activities.

189.    Plaintiffs' faces and/or bodies are clearly visible and readily identifiable and distinguishable in the images Defendants used.

190.    Plaintiffs never consented to, authorized, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images in a clandestine fashion without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

32

191.    Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images, posted the images to Defendants' social media platforms in an effort to market Defendants' Clubs and their activities and events without the authorization of Plaintiffs.

192.    In the alternative, at a minimum, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on their websites and/or social media platforms for the purpose of marketing and advertising Defendants, Defendants' Clubs, and their activities.

193.    Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

194.    Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

195.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as Defendants' Clubs and their related activities.

196. As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

197. As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

198. As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

199. As alleged in this Complaint, Defendants' actions demonstrate malice or aggravated or egregious fraud, and/or a flagrant disregard of Plaintiffs' rights, so as to warrant the imposition of punitive damages.

## SECOND CAUSE OF ACTION
### NEGLIGENCE

200. Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

201. Defendants had a duty to refrain from appropriating the images of those with whom they had not contracted and had not paid.

34

202.    As previously described, Defendants violated said duty by posting Plaintiffs' images on Defendants' websites and/or social media accounts in order to advertise, promote, and market Defendants, Defendants' Clubs, and their activities.

203.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as Defendants' Clubs and their related activities.

204.    As a direct and proximate result of Defendants' misappropriation of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

205.    As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

206.    As alleged in this Complaint, Defendants' actions demonstrate malice or aggravated or egregious fraud, and/or a flagrant disregard of Plaintiffs' rights, so as to warrant the imposition of punitive damages.

**THIRD CAUSE OF ACTION**
**UNJUST ENRICHMENT**

207.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

35

208.    As previously alleged, Defendants used Plaintiffs' misappropriated images and likenesses to advertise and promote Defendants, Defendants' Clubs, and their activities, thereby driving customers, business, and revenue to Defendants, Defendants' Clubs, and their activities. Accordingly, Plaintiffs conferred a benefit on Defendants.

209.    Defendants knew that they benefited from the use of Plaintiffs' images as is evident from the fact that Defendants repeatedly posted Plaintiffs' images to promote and advertise Defendants, Defendants' Clubs, and their activities.

210.    Nonetheless, although Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit, Defendants retained the benefits of using Plaintiffs' images and likenesses without compensating Plaintiffs.

211.    Moreover, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs' agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

212.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as Defendants' Clubs and their related activities.

213.    As a direct and proximate result of Defendants' actions, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

36

214.    As a direct and proximate result of the benefit Plaintiffs conferred on Defendants, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains as remuneration.

215.    As alleged in this Complaint, Defendants' willful and malicious acts have and will continue to cause Plaintiffs irreparable harm. Accordingly, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE OHIO DECEPTIVE TRADE**
**PRACTICES ACT, O.R.C. § 4165.02(A)(2) AND (3)**

216.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

217.    Defendants are "persons" within the meaning of O.R.C. § 4165.01(D).

218.    Plaintiffs are "persons" within the meaning of O.R.C. § 4165.01(D).

219.    In violation of O.R.C. § 4165.02(A), Defendants engaged in deceptive trade practices in the course of their business by misappropriating Plaintiffs' images and using such images without authorization on their websites and/or social media platforms in such a way that causes likelihood of confusion or misunderstanding as to Plaintiffs' sponsorship, approval, affiliation, connection, and/or association with Defendants, Defendants' Clubs, and their activities.

220.    Indeed, as described above, Defendants' use of Plaintiffs' images and likenesses represents to the public that Plaintiffs work for, sponsor, approve of, or are affiliated, connected, or otherwise associated with Defendants, Defendants' Clubs, and their activities.

37

221.    Defendants' advertisements, promotions, and publications using Plaintiffs' images and likenesses, however are false, misleading, confusing, and fraudulent. Plaintiffs do not work for and neither sponsor nor approve of Defendants, Defendants' Clubs, or their activities, nor are Plaintiffs affiliated, connected, or otherwise associated with Defendants, Defendants' Clubs, or their activities.

222.    Plaintiffs never consented to, authorized, or otherwise permitted Defendants' use of their images, likenesses, or identities for any purpose. Rather, Defendants misappropriated Plaintiffs' images in a clandestine fashion without Plaintiffs' knowledge and without even attempting to acquire Plaintiffs' permission.

223.    Defendants acted intentionally by selecting Plaintiffs' images and, knowing they did not have permission to use the images, posted the images to Defendants' websites and/or social media platforms in an effort to market Defendants, Defendants' Clubs, and their activities.

224.    In the alternative, at a minimum, Defendants acted with reckless disregard to Plaintiffs' legal rights by expressly permitting, allowing, or condoning the use of Plaintiffs' images on their websites and/or social media platforms for the purpose of marketing and advertising Defendants, Defendants' Clubs, and their activities.

225.    Defendants are in the adult entertainment business and knew or should have known of the standard negotiation process over the terms of use, conditions of release, licensing issues, and other contractual incidences related to the use and exploitation of a professional model's image and likeness for Defendants' commercial benefit.

226.    Nonetheless, Defendants circumvented the appropriate licensing and negotiating process, thereby avoiding payment to Plaintiffs, the cost of photoshoots, payments to Plaintiffs'

38

agents or agencies, and the cost of licensing, totaling a substantial sum of money and resulting in a windfall for Defendants.

227. Upon information and belief, as a direct and proximate result of Defendants' deceptive trade practices, members of the public were deceived into believing that Plaintiffs worked for, sponsored, approved of, or were affiliated, connected, or otherwise associated with Defendants, Defendants' Clubs, or their activities, resulting in increased patronage to Defendants' Clubs or their activities, increased business, and increased profits for Defendants.

228. Defendants' deceptive trade practices have and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with, or endorsement of disreputable establishments, such as Defendants' Clubs and their related activities.

229. As a direct and proximate result of Defendants' deceptive trade practices, Defendants have damaged Plaintiffs by failing to compensate them for the value of each misappropriated use of their likeness.

230. As a direct and proximate result of Defendants' deceptive trade practices, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to a disgorgement of those ill-gotten gains.

231. As alleged in this Complaint, Defendants' deceptive trade practices have and will continue to cause Plaintiffs irreparable harm. Accordingly, pursuant to O.R.C. § 4165.03(A), Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

232.     Defendants' deceptive trade practices were purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their businesses, increase profits, and avoid paying money to legally acquire the right to commercially use Plaintiffs' images. Accordingly, pursuant to O.R.C. § 4165.03(B), Plaintiffs are entitled to reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION
### VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(A)

233.     Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

234.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), applies to Defendants.

235.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects Plaintiffs from Defendants' conduct described herein.

236.     Defendants used Plaintiffs' images, likenesses, and/or identities as described herein without authority in order to, *inter alia*, create the perception that Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, Defendants' Clubs, and their activities and/or that Plaintiffs consented to or authorized Defendants or Defendants' Clubs' usage of Plaintiffs' images in order to advertise, promote, and market  Defendants, Defendants' Clubs, and their activities.

237.     Defendants' use and alteration of Plaintiffs' images, likenesses, and/or identities to advertise, promote, and market Defendants, Defendants' Clubs, and their activities as described in this Complaint was false and misleading and a misrepresentation of fact.

238.     Defendants' unauthorized use and alteration of Plaintiffs' images, likenesses, and/or identities as described in this Complaint constituted false advertising by suggesting or implying, *inter alia*, that (1) Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, Defendants' Clubs, and/or their activities, (2) Plaintiffs consented to or authorized

Defendants or Defendants' Clubs to use their images in order to advertise, promote, and market Defendants, Defendants' Clubs, and/or their activities, and/or (3) Plaintiffs would participate in or appear at the specific events promoted in Defendants' advertisements and promotions.

239.    Defendants' false advertising described above has the capacity or tendency to confuse or deceive consumers, including actual and prospective patrons to Defendants' Clubs, as to the general quality of attendees and participants at Defendants' Clubs and in their events, as well as specifically whether Plaintiffs worked or would appear in person at, endorsed, sponsored, or approved of, or were otherwise affiliated or associated with Defendants, Defendants' Clubs, and their activities.

240.    Upon information and belief, Defendants' false and deceptive advertising described above did, in fact, deceive and/or cause consumer confusion  as to whether Plaintiffs worked or would appear in person at, endorsed, sponsored, or approved of, or were otherwise affiliated or associated with Defendants, Defendants' Clubs, and their activities.

241.    Among other things, upon information and belief, such unauthorized use and alteration of Plaintiffs' images and likenesses misled and served to entice consumers and prospective consumers to visit Defendants' Clubs and participate in and attend events at Defendants' Clubs and thereby had a material effect and impact on the decision of patrons and prospective patrons to visit Defendants' business establishments.

242.    Defendants' advertisements, promotions, and marketing of Defendants' Clubs and their events occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from several different states across the United States. Defendants principally use the World Wide Web,

social media, and other vehicles of interstate commerce to advertise, market, promote, and entice or lure traffic and patronage to their establishments.

243.    Defendants' unauthorized use of Plaintiffs' images, likenesses, and/or identities as described herein was designed to benefit Defendants' commercial and business interests by, among other things, promoting Defendants' Clubs and their activities and attracting clientele to Defendants' Clubs, thereby generating revenue for Defendants to the detriment of Plaintiffs.

244.    Defendants knew or should have known that their unauthorized use of Plaintiffs' images, likenesses, and/or identities would cause consumer confusion as described in this Complaint.

245.    Defendants' unauthorized use and alteration of Plaintiffs' images, likenesses, and/or identities, as described herein violates 15 U.S.C. §1125(a), and was wrongful.

246.    Defendants' wrongful conduct as described herein was willful.

247.    Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of their interests and rights, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

248.    The method and manner in which Defendants used and altered Plaintiffs' images further evinces that Defendants were aware of and/or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of their images to advertise Defendants' businesses.

249.    Defendants' unauthorized use and alteration of Plaintiffs' images and likenesses has and will continue to directly and proximately cause irreparable harm and damage to Plaintiffs, their reputations, and brands by attributing to Plaintiffs their association with, involvement with,

or endorsement of disreputable establishments, such as Defendants' Clubs and their related activities.

250.    As a direct and proximate result of Defendants' use and alteration of Plaintiffs' images and likenesses, Defendants have damaged Plaintiffs by failing to compensate them for such use, thereby entitling Plaintiffs to recover in money damages the actual and fair market value of each misappropriated use of their images and likenesses in an amount to be established by proof at trial.

251.    As a direct and proximate result of Defendants' conduct as alleged herein, Defendants have earned and withheld profits attributable directly or indirectly to the unlawful use of Plaintiffs' images, entitling Plaintiffs to disgorgement of those ill-gotten gains in an amount to be established by proof at trial.

252.    As alleged in this Complaint, Defendants' actions have and will continue to cause Plaintiffs irreparable harm. Accordingly, pursuant to 15 U.S.C. § 1116, Plaintiffs are entitled to injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

253.    Defendants' conduct was purposeful and malicious in that Defendants knowingly violated Plaintiffs' rights solely to benefit their business, increase profits, and avoid paying money to legally acquire the right to commercially use Plaintiffs' images, and consequently, exceptional relief is warranted pursuant to 15 U.S.C. § 1117(a), entitling Plaintiffs to treble damages and reasonable attorneys' fees.

## **INJUNCTION**

254.    Plaintiffs incorporate by reference, as if fully rewritten herein, the allegations previously set forth, and further allege as follows.

255.    Defendants have misappropriated Plaintiffs' images and likenesses for use in Defendants' marketing, advertisements, and promotions, thereby falsely suggesting or implying, *inter alia*, that (1) Plaintiffs worked at, endorsed, or were otherwise affiliated with Defendants, Defendants' Clubs, and/or their activities, (2) Plaintiffs consented to or authorized Defendants or Defendants' Clubs to use their images in order to advertise, promote, and market Defendants, Defendants' Clubs, and/or their activities, and/or (3) Plaintiffs would participate in or appear at the specific events promoted in Defendants' advertisements and promotions.

256.    As described above, Defendants' actions violate state and federal law and have caused and will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

257.    Furthermore, in light of Defendants' repeated violation of Plaintiffs' rights on multiple occasions, injunctive relief is necessary to prohibit Defendants from continuing to engage in the conduct described in this Complaint.

258.    Plaintiffs therefore seek injunctive relief, requiring Defendants to remove Plaintiffs' misappropriated images from Defendants' social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization.

259.    Such injunctive relief will not cause harm to any third parties. Rather, such injunctive relief will benefit third parties and the public, as such relief will aid in mitigating the misleading and confusing effects of Defendants' false advertising.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants in amounts to be determined at trial, as follows:

1.     Compensatory damages for each Plaintiff against Defendants in an amount in excess of the jurisdictional limits of this Court;

2.     Disgorgement of profits attributable to Defendants' misappropriation of Plaintiffs' images and likenesses;

3.     Treble damages;

4.     Punitive damages;

5.     Attorneys' fees and costs;

6.     Pre and post judgment interest;

7.     Injunctive relief requiring Defendants to remove Plaintiffs' misappropriated images from their social media accounts and enjoining Defendants from using Plaintiffs' images in the future without authorization; and

8.     Such other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ David C. Harman*
David C. Harman (87882)
Janet G. Abaray (2943)
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE P.C.**
312 Walnut St., Suite 2090
Cincinnati, OH 45202
Phone: (513) 852-5600
Fax: (513) 852-5611
Email: dharman@burgsimpson.com
Email: jabaray@burgsimpson.com

*Attorneys for Plaintiffs*

45

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a trial by jury on all issues so triable.

*/s/ David C. Harman*
David C. Harman (87882)